Shahmohamad v Shahmohamad (2025 NY Slip Op 00779)

Shahmohamad v Shahmohamad

2025 NY Slip Op 00779

Decided on February 7, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 7, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., MONTOUR, OGDEN, DELCONTE, AND HANNAH, JJ.

953 CA 23-01233

[*1]SAHAR SHAHMOHAMAD, PLAINTIFF-APPELLANT,
v
HOSSEIN SHAHMOHAMAD, DEFENDANT-RESPONDENT. 

RICHARD S. LEVIN, WEBSTER, FOR PLAINTIFF-APPELLANT.

 Appeal from an order of the Supreme Court, Monroe County (Kevin M. Nasca, J.), entered June 5, 2023. The order, among other things, granted that part of defendant's motion seeking one-half of the proceeds from the sale of plaintiff's half interest in certain real property, and denied that part of plaintiff's cross-motion seeking a determination that defendant engaged in frivolous conduct. 
It is hereby ORDERED that the order so appealed from is unanimously modified on the law by denying the motion in its entirety, and as modified the order is affirmed without costs.
Memorandum: In this postjudgment matrimonial proceeding, defendant moved for an order, inter alia, directing plaintiff to pay him half of the proceeds from the sale of her half-interest in real property located in a foreign country that had been acquired during their marriage. According to defendant, he was entitled to share equally in the proceeds of the sale pursuant to the terms of the parties' settlement agreement, which was incorporated but not merged into the judgment of divorce. Plaintiff opposed the motion and cross-moved for an order, inter alia, determining that defendant had engaged in frivolous conduct. Plaintiff now appeals from an order that, insofar as appealed from, granted that part of defendant's motion seeking half of the proceeds from the sale of plaintiff's half-interest in the property, ordered plaintiff to pay defendant a certain amount, and denied that part of plaintiff's cross-motion seeking a determination that defendant had engaged in frivolous conduct.
Plaintiff contends that, under the terms of the agreement and the circumstances presented herein, defendant is not entitled to half of the proceeds from the sale of her half-interest in the property. We agree, and we therefore modify the order accordingly.
"[A] separation agreement that is incorporated but not merged into a judgment of divorce 'is a contract subject to the principles of contract construction and interpretation' " (Anderson v Anderson, 120 AD3d 1559, 1560 [4th Dept 2014], lv denied 24 NY3d 913 [2015], quoting Matter of Meccico v Meccico, 76 NY2d 822, 823-824 [1990], rearg denied 76 NY2d 889 [1990]). "The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent . . . [, and] [t]he best evidence of what [the] parties . . . intend is what they say in their writing" (Greenfield v Philles Records, 98 NY2d 562, 569 [2002] [internal quotation marks omitted]; see Colella v Colella, 129 AD3d 1650, 1651 [4th Dept 2015]). "Where such an agreement is clear and unambiguous on its face, the intent of the parties must be gleaned from the four corners of the instrument and not from extrinsic evidence . . . , and the agreement in that instance must be enforced according to the plain meaning of its terms" (Roche v Lorenzo-Roche, 149 AD3d 1513, 1513-1514 [4th Dept 2017] [internal quotation marks omitted]; see Greenfield, 98 NY2d at 569; Meccico, 76 NY2d at 824; Matter of Wheeler v Wheeler, 174 AD3d 1507, 1508-1509 [4th Dept 2019]). "When interpreting a contract . . . , the court should arrive at a construction that will give fair meaning to all of the language employed by the parties to reach a practical interpretation of the expressions of the parties so that their reasonable expectations will be realized" (Sears v Sears, 138 AD3d 1401, 1401 [4th Dept 2016] [internal quotation marks omitted]; see Wheeler, 174 AD3d at 1509). Furthermore, the [*2]court "may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing" (Vermont Teddy Bear Co. v 538 Madison Realty Co., 1 NY3d 470, 475 [2004] [internal quotation marks omitted]; see Wheeler, 174 AD3d at 1510; Tallo v Tallo, 120 AD3d 945, 946 [4th Dept 2014]).
Here, the parties acknowledged in the agreement that they had acquired the property during their marriage and that the property was titled to plaintiff and to their minor son. Importantly, the agreement provided that "[t]he parties agree that said real property shall be sold as soon as practicable and the proceeds shall be spilt evenly between the parties unless otherwise agreed upon by the parties." Although the parties acknowledged that enforcement of the agreement pertaining to the property could be difficult in the foreign country, the agreement nonetheless further provided that "[t]he parties stipulate and agree to be bound by the terms herein and shall cooperate in the sale and signing any and all documents necessary to effectuate the terms of this [a]greement." A separate article of the agreement reiterated each party's obligation to reasonably cooperate to give full force and effect to the provisions of the agreement. Additionally, the agreement provided that it contained the entire understanding of the parties, that failure of either party to insist upon strict performance of any provision would not be deemed a waiver thereof, and that each party would have the right to seek any remedy available in law or equity in the event of a breach of the agreement.
Giving fair meaning to all of the language in the agreement "to reach a practical interpretation of the expressions of the parties so that their reasonable expectations will be realized" (Sears, 138 AD3d at 1401 [internal quotation marks omitted]; see Wheeler, 174 AD3d at 1509), we conclude that the parties unambiguously agreed, despite the manner in which the property was titled, to sell the entire property and to divide evenly between them the proceeds from the sale of the whole (see Kelly v Kelly, 165 AD3d 771, 771-772 [2d Dept 2018]; Dimond v Dimond, 105 AD3d 891, 892 [2d Dept 2013]; Fuchs v Fuchs, 134 AD2d 406, 407 [2d Dept 1987]). Indeed, that is the only reasonable interpretation of the agreement inasmuch as the terms thereof invariably referred to the "real property" in its entirety even while recognizing that it was titled in the names of plaintiff and the son, the parties included an estimated value of the whole property, and the parties contemplated an even division of the proceeds from the sale of the property after mutually cooperating to effectuate that sale (see Kelly, 165 AD3d at 771-772; Sears, 138 AD3d at 1402; Dimond, 105 AD3d at 892; Fuchs, 134 AD2d at 407).
Plaintiff, however, established through documentary evidence submitted via the affirmation of her counsel that she was prevented, despite her efforts, from effectuating a sale of the entire property in the foreign country. We note that, contrary to the court's determination, "[t]he affidavit or affirmation of an attorney, even if [they have] no personal knowledge of the facts, may, of course, serve as the vehicle for the submission of acceptable attachments which do provide 'evidentiary proof in admissible form' " (Zuckerman v City of New York, 49 NY2d 557, 563 [1980]; see Melniker v Melniker, 170 AD3d 448, 449 [1st Dept 2019]). The record, including defendant's own submissions, further establishes that plaintiff then sold her half-interest in the property and, although the parties dispute whether that sale was directly to the son under defendant's guardianship or to defendant's father before transfer to the son, it is undisputed that plaintiff's half-interest was purchased, at least in part, with defendant's money.
We conclude that, by directing plaintiff to pay defendant half of the proceeds from the sale of her half-interest in the property when defendant or the son over whom he has guardianship retained ownership or control over the property, the court, under the guise of construing and enforcing the agreement, rewrote the agreement in a manner that relieved defendant of his contractual obligations at the expense of plaintiff's contractual rights (see Sears, 138 AD3d at 1402). To the extent that defendant claims that he could not perform his contractual obligation under the agreement to effectuate the sale of the entire property by arranging, as the son's guardian, the sale of the other half-interest in the property titled in the son's name, that purported restraint was foreseeable and a specific provision could have been made for its occurrence, but was not (see Lainez v Orellana, 174 AD3d 792, 795 [2d Dept 2019]). We thus agree with plaintiff that requiring plaintiff to remit to defendant half of the proceeds from the sale of her half-interest in the property without a concomitant requirement that she receive compensation from a sale of the other half-interest in the property would result in a decidedly unfair transaction that is antithetical to the terms of the agreement (see Sears, 138 AD3d at 1402; Davis v Davis, 128 AD2d 470, 478 [1st Dept 1987]; see also Fuchs, 134 AD2d at [*3]407).
Finally, although the court erred in granting that part of the motion seeking half of the proceeds from the sale of plaintiff's half-interest in the property, we nonetheless conclude that the court did not abuse its discretion in denying plaintiff's cross-motion insofar as it sought a determination that defendant's actions were frivolous because, contrary to plaintiff's contention, defendant did not engage in frivolous conduct within the meaning of 22 NYCRR 130-1.1 (c) (see Matter of Fischione v PM Peppermint, Inc., 197 AD3d 970, 971 [4th Dept 2021]; Kimmel v State of New York, 115 AD3d 1323, 1325 [4th Dept 2014]).
Entered: February 7, 2025
Ann Dillon Flynn
Clerk of the Court